

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-12-00170-CR

---

COLLIN RIDER, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 11-0002X

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A struggle between Collin Rider and Carroll Reeves to gain control of a handgun resulted in Reeves' death. Rider was convicted of Reeves' murder and was sentenced to thirty years' incarceration in the Texas Department of Criminal Justice Correctional Institutions Division.[1] We affirm Rider's conviction because (1) his complaint regarding the removal of a juror prior to commencement of trial is moot,[2] (2) the trial court did not abuse its discretion in admitting photographs, and (3) the trial court's instructions to disregard the State's improper comment and question were sufficient to cure any error.

The chain of events finally resulting in Reeves' death commenced October 16, 2010, when Rider and his girlfriend, Jessica Brewer, paid a visit to Reeves at his home, where both Rider and Reeves ingested methamphetamine. As Rider and Brewer left Reeves' residence, Reeves handed Rider some money and some amplifiers for stereo equipment, ostensibly in payment for the purchase of methamphetamine.

A short time later, Rider and Brewer returned to Reeves' residence, into which he entered through a rear door,[3] and where he remained for five to ten minutes. Rider testified that Reeves pointed a gun at him as he entered the residence and that a struggle for possession of the gun ensued. He went on to say that as the two wrestled over possession of the gun, a series of discharges resulted. As a consequence, Rider suffered a bullet wound in his foot and Reeves was

---

[1] Tex. Penal Code Ann. § 19.02 (West 2011).

[2] Had it not been moot, the substance of the complaint would have been waived.

[3] While Rider claims that he did not force the back door open, the physical evidence indicates the door was forced open. The doorjamb and the facing of the back door were broken. Brewer remained in the car on the second visit to Reeves' residence.

struck three times. The three bullet wounds suffered by Reeves (in the leg, upper back, and lower back) proved to be fatal. Rider was hospitalized for treatment of the wound to his foot and subsequently arrested and charged with the murder of Reeves.

*(1)      Complaint Regarding Removal of Juror Prior to Commencement of Trial Is Moot*

In his first two points of error, Rider complains of fundamental error in the removal of an unknown original juror, whom he alleged was removed by the trial court without basis and with no appellate record of the names of those seated on the jury. The crux of this complaint centers on the perceived absence of an appellate record of the events resulting in the removal of an "unknown original juror." However, a supplemental record (filed after Rider had filed his brief) provides much of the information which Rider indicates was missing, and this supplemental record moots much of this claim.

The supplemental record indicates that the juror who was excused after empanelment "called the office" on the Friday before trial regarding a matter which might impact his ability to serve. On the following Monday, prior to the commencement of trial, the juror explained that his wife was scheduled to undergo surgery on the following Thursday. While the surgery was "nothing major," the juror indicated that anesthesia would be required, and he wanted to be present with his wife. Following this explanation, both the State and Rider indicated that they had no objection to the juror's release from duty, who was released by the trial court and was

replaced on the panel by the first alternate juror.[4]  Because both the excused juror and the alternate juror are plainly identified in the later-filed supplement to the appellate record, there is no issue regarding the identity of the jurors who heard this case.

Moreover, any complaint Rider now has regarding the removal of the original juror subsequent to empanelment was waived.  To preserve a complaint for our review, a party must generally have presented to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  *See* TEX. R. APP. P. 33.1(a).  A complaint at trial informs the court of the nature of the issue and affords the court an opportunity to rule.  *See Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002).

Rider neither complained nor otherwise objected to the removal of the original juror. Contrarily, Rider acquiesced in the decision to remove the juror, stating, "Judge, we'll support whatever the Court decides."  Thus, to the extent Rider now complains of the original juror's removal from the panel without adequate reason, such complaint has been waived.  TEX. R. APP. P. 33.1(a).

---

[4]Article 33.011 of the Texas Code of Criminal Procedure provides, in pertinent part:

> Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant . . . become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties.

TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (West Supp. 2012).

4

*(2)    The Trial Court Did Not Abuse Its Discretion in Admitting Photographs*

"The admissibility of a photograph is within the sound discretion of the trial judge." *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004); *see also McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement. *McCarty*, 257 S.W.3d at 239. Unless there is clear abuse of the trial court's discretion, its ruling will not be reversed. *Id.*

The State offered numerous photographs into evidence, including graphic photographs depicting injuries to Reeves. Rider objected to nine photographs, all depicting the deceased. Rider's specific objection centered on a particular wound on the left side of the back, which appears, according to the report of the medical examiner, "to have multiple yellow irregular defects that are consistent with postmortem insect or animal activity." Due to the postmortem defects, Rider argued the photographs of this particular wound

> would not have probative value to the jury as to the cause of death, the manner of death or anything else other than its description . . . .
> They're graphic in nature. The tendency of those photographs is to excite or inflame the passions of the jury and it greatly outweighs their probative value.
> In addition . . . , [they] are multiple photographs of the same injury.

The State responded that the purpose of the photographs was not to show the injury, but to depict specific evidence in relationship to the body, such as a bullet underneath Reeves' hand. The trial court sustained Rider's objection with respect to the duplicitous photographs under Rule 403, but allowed three of the photographs to be introduced.[5]

_____

[5]The admitted photographs are identified as State's Exhibits 52, 56, and 59.

5

On appeal, Rider maintains that the trial court abused its discretion in admitting the photographs, citing Rule 403 of the Texas Rules of Evidence. TEX. R. EVID. 403. Relevant evidence is generally admissible, but it is properly excluded under Rule 403 when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. "Unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (en banc) (quoting *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990)). Almost all evidence offered by the prosecution will be prejudicial to the defendant. Therefore, only evidence which is unfairly prejudicial should be excluded under Rule 403. *DeLeon v. State*, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref'd). Moreover, Rule 403 carries with it a presumption that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g).

In deciding whether the photographs are unfairly prejudicial, we are to consider the following factors: (1) the number and size of the photographs, (2) their gruesomeness, (3) whether they are black and white or color, (4) whether they are close-up, (5) whether the body is naked or clothed, and (6) whether the body, as photographed, has been altered since the crime in a way that might enhance its gruesomeness. *Prible v. State*, 175 S.W.3d 724, 734 (Tex. Crim. App. 2005); *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992) (en banc).

State's Exhibit 52 shows Reeves lying face down on the floor in the foyer of his home. This photograph depicts an open knife in Reeves' right hand, as well as a shell casing under his left hand. Exhibit 52 also depicts a gunshot entrance wound on the left lower side of the back and a corresponding exit wound in the left lateral side of the trunk. Finally, this photograph depicts a hole in the victim's T-shirt in the left shoulder area, with a bloodstain around it. The body is fully clothed, although the shirt is pulled up in the area of the wound. Exhibit 56 depicts the same scene, from a closer angle. Exhibit 59 is much the same as Exhibit 56, although it is taken from a different angle which more clearly depicts the lower back wound. Each of the photographs are colored.

In addition to the foregoing factors, we are also to consider: (1) the inherent probative force of the proffered evidence, (2) the proponent's need for the evidence, (3) its tendency to suggest decision on an improper basis, (4) its tendency to confuse or distract the jury from the main issues, (5) its tendency to be given undue weight by a jury, and (6) the likelihood that the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Rider claims the probative force of the evidence, its tendency to suggest decision on an improper basis, and its tendency to confuse or distract the jury from the main issues all weigh in favor of exclusion. This argument is based on the claim that the entrance wound in the low back was altered after the time of death by postmortem insect or animal activity, thus, enhancing the

7

gruesome quality of these photographs.[6] Rider thus contends the size and extent of this wound is not related to his direct action and should not have been admitted at trial. Further, Rider claims the photographs depict the indignities suffered by Reeves' body after he died. Both of these circumstances, Rider claims, are unfairly prejudicial. Additionally, the fact that Reeves was killed by gunshot wounds was never directly or indirectly disputed by Rider.[7]

We believe the probative force of this evidence and the proponent's need for it weigh in favor of admission. Rider argued self-defense at trial, advising the jury that "you're going to be asked to decide" if Rider acted "in self-defense, because that's what this is about." Rider testified that after he entered the house, Reeves walked to a cabinet, retrieved a gun, and pointed it at Rider's chest. Rider grabbed the gun, a struggle ensued, and the gun fired several times, hitting Rider in the foot and striking Reeves in the leg and twice in the back. The State maintained that Rider broke into Reeves' home, based on the fact that the back door was damaged. According to the State, Reeves grabbed a gun to defend himself, and Rider gained control of the gun. Reeves fell to the ground after he was struck in the left leg. It was then that Rider shot Reeves twice in the back. The photographs are probative of the manner of death and also could be interpreted to indicate that Reeves was shot twice in the back, an issue relevant to Rider's claim of self-defense.

Moreover, the photographs depict the location of Reeves' body, together with other evidence—the knife and the shell casing. They were limited in number and the State focused on

---

[6]Rider states that the entrance wound depicts postmortem defects. To be clear, the autopsy report indicates that the exit wound exhibited these defects: "A 3 inch in diameter, gaping irregular exit defect is on the lateral left side of the trunk . . . . The exit defect has irregular edges . . . consistent with postmortem insect/animal activity."

[7]The autopsy report established the cause of death as gunshot wounds.

them only to the extent necessary to explain the location of the knife and the shell casing. The knife was located in or under Reeves' right hand. The evidence indicated that Reeves was left-handed. The inference here, according to the State, was that Rider planted the knife in Reeves' right hand, as depicted in the photographs. Again, this information was relevant to Rider's claim of self-defense.

While the photographic depiction of the entrance wound was no doubt made more gruesome due to postmortem changes, this information was submitted to the jury solely by way of the autopsy report; no witness ever mentioned these postmortem changes. Certainly, the State did not focus on the condition of the wound. Given these circumstances, we cannot say the probative value of these photographs was substantially outweighed by the danger of unfair prejudice. "A trial court does not err merely because it admits into evidence photographs which are gruesome." *Paredes*, 129 S.W.3d at 540 (quoting *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995)). The trial court did not abuse its discretion in admitting these photographs.

(3)     *The Trial Court's Instructions to Disregard the State's Improper Comment and Question Were Sufficient to Cure Any Error*

Rider complains of a comment and a question posed by the State during Rider's cross-examination. Rider's objections to each were sustained, and the jury was instructed to disregard the improper comment and question. The trial court, in each instance, overruled Rider's motion for mistrial. This, Rider claims, was harmful error. We disagree.

Rider testified that Reeves pulled a handgun on Rider, resulting in a scuffle. Rider also testified that during the scuffle, Reeves pulled a knife on him as well. It is undisputed that

9

Reeves was found with a knife in his right hand. When cross-examining Rider, the State established that Reeves was left handed. When the State asked Rider if he placed the knife in Reeves' right hand after the fact, Rider responded that he did not. The State then commented—ostensibly in the form of a question—"And I can understand a right-handed man thinking, 'This man's right-handed' and putting that knife in the right hand." Rider objected to this statement as argumentative. After the trial court sustained the objection, Rider moved to strike "the colloquy of [the State]." The trial court instructed the jury to "disregard the latter statement made by [the State]." Rider then indicated that "the comments that [the State] made are of such a nature, go outside the record here, no manner of instruction to disregard to the jury gives me reason to believe would the [sic] cure the harm, and we move for a mistrial." This motion was overruled.

One weakness with Rider's self-defense argument was the fact that the back door of Reeves' house was damaged. In this vein, Rider testified that when he returned to Reeves' house, he initially knocked on the front door, and heard Reeves yell to "[c]ome around back." The following exchange ensued:

> Q    Okay. So you go around back, and he's in such a rage that he yanks the door almost off the hinges, his own door, right?
>
> A    We had trouble getting the door open, yes, sir.
>
> Q    Okay. And so you had to put your shoulder into it, right, to knock that door open?
>
> A    No, not to knock the door open, no, sir.
>
> Q    So this man tore up his own door to get you in his house? Is that what you're testifying to?

10

Rider objected to this line of questioning as improper impeachment. The trial court sustained this objection and, on request, instructed the jury to "disregard the last series of questions." Rider then moved for a mistrial on the basis that because these questions were argumentative, "no possible instructions from the Court to disregard it could cure the error . . . ." This motion was denied.

Rider contends that the combination of the argument that Rider placed the knife in Reeves' hand after the fact together with the question regarding the cause of the damage to Reeves' back door constituted harmful error which could not be remedied by the instructions to disregard. He maintains that in the absence of the improper statement and question, Rider presented a viable claim of self-defense.

The determination of whether an error requires a mistrial is made on a case-by-case basis. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). The decision to grant a mistrial is left to the discretion of the trial court. *Id*. To establish an abuse of discretion, the defendant must show prejudicial and incurable error. *Id*.; *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc). A mistrial should be granted "'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884–85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

An improper question will seldom call for a mistrial because, normally, any harm can be cured by an instruction to disregard. *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Whether a curative instruction is effective depends on the facts and circumstances of each case. *Wood v.* State, 18 S.W.3d 642,

11

648 (Tex. Crim. App. 2000).  The magnitude of the probable effect of the question on the jury must be balanced against the probable efficacy of an instruction to disregard.  The greater the magnitude of effect, the less likely an instruction would cure the harm.  *Searcy v. State*, 231 S.W.3d 539, 549 (Tex. App.—Texarkana 2007, pet. ref'd) (citing *Hardin v. State*, 20 S.W.3d 84, 93 (Tex. App.—Texarkana 2000, pet. ref'd)).  There are several nonexhaustive, nonexclusive factors this Court has adopted from its review of numerous Texas Court of Criminal Appeals cases when deciding whether an instruction is curative.  *Stine v. State*, 300 S.W.3d 52, 59 (Tex. App.—Texarkana 2009, pet. dism'd, untimely filed) (citing *Hardin*, 20 S.W.3d at 93).  Such factors include:  (1) the weight of other evidence supporting the decision, (2) the nature and form of the question, (3) whether other evidence concerning the same subject has been admitted, (4) the particular instruction given, and (5) the harm to the accused as measured by the severity of the sentence.  *Id*.

Rider contends his defense hinged on the facts supporting his claim of self-defense.  One of the factors supporting that claim was the fact that a knife was found in Reeves' hand.  However, the State established, prior to the utterance of the objectionable comment, that Reeves was left handed.  The State also specifically asked Rider if he placed the knife in Reeves' right hand after the fact, and Rider stated that he did not.  It was only after this question, to which no objection was voiced, that the prosecutor made the statement that he could understand a right-handed person placing the knife in Reeves' right hand.

This statement was not necessarily intended to elicit testimony; rather, it was apparently intended to plant the seed in the mind of the jury that Rider did, indeed, place the knife in

12

Reeves' right hand. However, this seed had already been planted. The trial court instructed the jury that it was to disregard the State's comment. Further, the record contains ample evidence that Rider broke into Reeves' home, and Reeves was merely attempting to defend himself. Finally, Rider's sentence for the crime of murder was thirty years, far less than the maximum punishment.[8]

We conclude the court's instruction to disregard was curative. The trial court did not err in overruling the motion for a mistrial based on the prosecutorial statement regarding placement of the knife in Reeves' right hand.

A second key factor relating to Rider's claim of self-defense was the issue of the broken back door. Rider testified that he and Reeves had trouble opening the back door. The State introduced evidence that the doorjamb and the facing of the back door were broken, and the striker plate was missing from the doorjamb. Photographic evidence of this damage was introduced to the jury. From this evidence, the jury could conclude that the back door was forced open. Given the other evidence in the record, as previously discussed, and the relatively moderate sentence imposed, we conclude the court's instruction to disregard was curative. The trial court did not err in overruling the motion for a mistrial based on the State's questions relating to the broken back door.

---

[8] An individual found guilty of a first degree felony offense is subject to imprisonment "for life or for any term of not more than 99 years or less than 5 years." TEX. PENAL CODE ANN. § 12.32(a) (West 2011).

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     April 24, 2013
Date Decided:       April 25, 2013

Do Not Publish