

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00110-CR

LEWIS LAVON JONES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2013-C-0310

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Although Lewis Lavon Jones had been considered a trusted friend of the family since the

early 1980s[1] and was even called Uncle Lewis, evidence at his trial for indecency with a child by

sexual contact was that he not only texted the family's son, Junior,[2] a photograph of Jones' penis,[3]

---

[1]Father testified that James frequently stayed the night at his home, that he had been around his two daughters since they were small children, and that, when Junior was young, Jones stayed in a camper about fifty yards from the house. Father thought of Jones "as a brother."

[2]To guard the child victim's privacy, we refer to him, his father, and the victim's sister by the pseudonyms Junior, Father, and Sister, respectively. *See* TEX. R. APP. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[3]Father testified that one day he was driving home with Junior when the camper he was towing had a flat tire. Because the battery on his cell phone was dead, he borrowed Junior's cell phone, and he saw that someone had texted Junior a photograph of a man's penis. Father testified that State's Exhibit 1 was a photograph of Junior's cell phone, and the photograph on the phone's screen was the same photograph he saw that day. Junior told him "who it was" and that "it had been happening for quite a while, but he just deleted [the photographs]." Father asked Junior if the person had made "him put his hands on him or had he touched him or have anything to do with him," and Junior said, "No."

Father called his daughter, Junior's thirty-four-year-old Sister, and asked her to speak with Junior because he knew that Junior would "talk with her about things that he [would not] normally talk to [him] about." Sister testified that Father called her, told her what he saw on Junior's cell phone, and said Jones had sent it. Father asked her to talk with Junior to see what happened. She asked Junior if Jones had ever done anything to him or if he had ever made Junior touch him on his penis. After hearing what Junior had to say, she called the sheriff's office, eventually speaking with Sarah Fields, an investigator with the Criminal Investigation Division of the Panola County Sheriff's Department, who set up an appointment for the next day at the Child Advocacy Center where Kishla Salazar, the executive director of the Rusk/Panola Children's Advocacy Center, conducted the forensic interview of Junior.

Junior testified that he was fourteen years' old and in the eighth grade. He confirmed his address and the identities of his family members. He testified that he had known Jones his entire life and that he and his sisters grew up around him. He knew that he was in court about an incident that occurred between him and Jones. His dad found out about the incident because Jones had been sending photographs of his penis to Junior's phone, and his dad saw one of the photographs. Junior testified that Jones told him that the photographs were of Jones' penis.

2

but he caused Junior to touch and stroke Jones' penis.[4]  The Panola County, Texas, jury found

Jones guilty, and the trial court sentenced Jones to fifteen years' incarceration.[5]

On appeal, Jones argues that the trial court erred in sentencing him because he did not waive his decision to have the jury determine punishment, in admitting text messages into evidence, and in assessing him the cost of preparing the appellate record.  We affirm the trial court's judgment because (1) Jones waived his election to have the jury determine punishment, (2) there was no error in admitting photographs of the text messages, and (3) Jones failed to properly request a free record.

*(1)*      *Jones Waived His Election To Have the Jury Determine Punishment*

Jones contends that the trial court erred in assessing his punishment because he had elected to have the jury serve that function.[6]  On this record, Jones waived that election.

Under Article 37.07, Section 2(b), of the Texas Code of Criminal Procedure, a criminal defendant has a statutory right to have the jury assess punishment if he "so elects in writing before the commencement of the voir dire examination of the jury panel."  TEX. CODE CRIM. PROC. ANN.

---

[4]Junior testified that, on the day of the sexual contact, he was on Hills Lake Road right by the lake hunting arrowheads with his Father and Jones when something happened between Jones and him.  The three of them had arrived about an hour before dark, and Junior testified that, while hunting arrowheads, Father and Jones had separated and gone to different points on the bank.  According to Father, he never lost sight of Junior for more than thirty minutes, and he was never more than a couple of hundred yards away from him, but he remembered that Jones and Junior were both near his Jeep.  Because it was a chilly night, Junior was running back and forth between his Father, the fire they had built, and Jones.  Junior testified that Jones made him touch his penis and stroke it back and forth until some liquid stuff came out.  Jones told him not to tell anyone or "otherwise we would get in trouble."  He then washed his hands in a mud hole and went back to the fire.

[5]Due to a prior felony conviction, the enhanced range of punishment was five to ninety-nine years or life.  *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2016).

[6]Even if this issue had not been waived, Jones states that he "does not seek a remand solely for a new punishment hearing before a jury."

3

art. 37.07, § 2(b) (West Supp. 2016). The defendant may change his prior election "if a finding of guilt is returned . . . with the consent of the attorney for the State." *Id.* If the accused exercises his statutory right and elects for the jury to assess punishment, but allows the trial court to assess punishment without objection, "it is presumed" that the defendant agreed to the change and waived his right. *See Hackey v. State*, 500 S.W.2d 520, 521 (Tex. Crim. App. 1973); *Mangham v. State*, 833 S.W.2d 705, 708 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

Before trial, the trial court granted Jones' written motion electing to have the jury assess punishment. During voir dire, however, the State informed the panel that they would not be assessing punishment, and neither party questioned the panel regarding punishment. After two days of testimony and evidence during the guilt/innocence phase of the trial, the jury returned a verdict of guilty. Even though no change of election appears in the record, the trial court stated that "the defendant in this case has elected to go to the court for punishment" and discharged the jury, all without objection by either party. After hearing the evidence on punishment, the trial court sentenced Jones to fifteen years in prison, and the final judgment reflects that Jones "elected to have the Court assess punishment."

Here, even though Jones had previously elected in writing to have the jury assess punishment, he failed to object when the trial court dismissed the jury and assessed punishment. He also failed to take issue with statements made at other times that he had chosen to have the court assess punishment. In the absence of evidence to the contrary, we must presume that Jones waived his statutory right. We overrule this point of error.

*(2)      There Was No Error in Admitting Photographs of the Text Messages*

Jones also asserts that the trial court erred in admitting State's Exhibits 1, a photograph of a "screen-shot" of a texted photograph on Junior's cell phone, and State's Exhibits 3–8, text messages purportedly between Jones and Father, because the "State produced absolutely no predicate evidence to support" their admission.

We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree."  *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  We may not substitute our own decision for that of the trial court.  *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Authentication is a condition precedent to an exhibit's admissibility.  *See* TEX. R. EVID. 901; *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (quoting TEX. R. EVID. 901(a)). "[T]ext messages may be authenticated by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  *Id*. at 600–01 (quoting TEX. R. EVID. 901(a)).  The trial court has the gate-keeping role of preliminarily determining whether the proponent of the item has supplied enough facts "to support a reasonable jury determination that the proffered evidence is authentic," while the fact-finder must determine whether the proffered evidence is what it purports to be.  *Id*. at 600.

5

"In performing its Rule 104 gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (citing TEX. R. EVID. 104). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Id.* "This has been aptly described as a 'liberal standard of admissibility.'" *Butler*, 459 S.W.3d at 600 (quoting Cathy Cochran, TEXAS RULES OF EVIDENCE HANDBOOK 922 (7th ed. 2007–08)). "The trial court's determination of whether the proponent has met this threshold requirement is subject to appellate review for an abuse of discretion and should not be countermanded so long as it is within the zone of reasonable disagreement." *Id.*; *Tienda*, 358 S.W.3d at 638.

Authentication of a text message "can be accomplished in myriad ways, depending on the unique facts and circumstances of each case, including through the testimony of a witness with knowledge[,] . . . through evidence showing distinctive characteristics," or "by comparison with other authenticated evidence." *Butler*, 459 S.W.3d at 601; *Tienda*, 358 S.W.3d at 638. A witness might have knowledge of the authorship of a text message if the witness was "the actual author of the text message." *Butler*, 459 S.W.3d at 601. While an association of a cell phone number or a Facebook account with a particular individual alone "might be too tenuous," other evidence, such as the text "message's 'appearance, contents, substance, internal patterns, or other distinctive characteristics,'" can support a conclusion that the message was sent by a particular author. *Id.* at 601, 602 (quoting TEX. R. EVID. 901(b)(4)).

(a)  State's Exhibit 1, Photograph on Junior's Cell Phone

State's Exhibit 1 is a photograph from the screen of a Verizon cell phone; at the top of the cell phone's screen is the word "INBOX"; the screen appears to show a photograph of a man's penis; the bottom of the screen shows "CB#:  903-216-7059."  Father testified that, when the battery of his cell phone died, he borrowed his son's cell phone for a moment and saw a photograph of a man's penis on the screen.  Seeing the photograph is "how [he] found out."  When shown State's Exhibit 1, he testified, "[T]hat's the cell phone," and that the picture shown on the screen is a fair and accurate representation of the image he saw that day on Junior's cell phone.  When State's Exhibit 1 was offered into evidence, Jones objected, arguing, "[T]here hasn't been a proper predicate laid."

The investigation in this case began after Father saw a photograph on Junior's cell phone, and Father testified that State's Exhibit 1 shows both Junior's cell phone and the photograph of a penis he saw on it.  Therefore, we find there is sufficient evidence for the trial court to have made the preliminary determination that the photograph is what the State purported it to be—a photograph of a man's penis from Junior's cell phone.[7] *See Butler*, 459 S.W.3d at 600–01.  Finding no abuse of discretion, we overrule this point of error.

---

[7]During his recorded interview, which was played for the jury later in the trial, Jones admitted that he sent photographs of his penis to Junior's phone.  He understood that "there are pictures on his phone . . . the pictures are there, uh-huh." He admitted that he was "guilty of sending some pictures."  Even though the interview was played after the exhibit was admitted, evidence prematurely admitted in error may be rendered admissible by subsequently admitted evidence. *See Searcy v. State*, 231 S.W.3d 539, 545 (Tex. App.—Texarkana 2007, pet. ref'd); *James v. State*, 102 S.W.3d 162 (Tex. App.—Fort Worth 2002, pet. ref'd).

<u>(b)  State's Exhibits 3–8, Photographs of Text Messages on Father's Cell Phone</u>

Father testified that, after seeing the photograph on Junior's cell phone, he confronted and communicated with Jones through a series of text messages.  Father recognized State's Exhibits 3–8 as screenshots of some of the text messages he had exchanged with Jones.  Without any further questions or testimony regarding the content or context of the text messages, the State then offered them into evidence, and Jones objected, arguing that "there's been an inadequate predicate laid."

Father testified that he asked Jones what he was doing texting photographs to Junior and that in reply, Jones texted (State's Exhibit 3), "Not my place but lot o shit I thot u knew."   Father asked what it was that he "didn't know about," and Jones texted (State's Exhibit 4), "Ask [Junior]."  When Father asked Jones whether he had told his mother about "his little picture sending," Jones replied (State's Exhibit 5), "Iv done enuf to her already BUT IF U WANT TO DRIVE THE LAST NAIL."  In direct reply, Father texted (State's Exhibits 6–7), "Your the one that drove every nail in her coff . . . and im driving everyone of urs."  Jones responded with a text (State's Exhibit 8) stating "uneed to kill evbody involvd including some ur family."  State's Exhibit 2, which Jones does not challenge on appeal, is a picture of a cell phone screen, showing Jones's name and the telephone number 903-216-7059.

Here, Father testified that he and Jones communicated through a series of text messages and that State's Exhibits 3–8 were accurate photographs of those text messages.  State's Exhibits 3, 4, and 8, all purportedly messages from Jones to Father, show a "Callback #:  903-216-7059," which is listed as Jones' phone number in State's Exhibit 2.  We find there is sufficient evidence for the trial court to have made the preliminary determination that the text messages were what the

8

State purported them to be—the text messages between Jones and Father. *See id.* at 600–01. Even if the exhibits were admitted prematurely or in error, Father's subsequent explanation of the messages provides further authentication, and the jury later heard the recorded interview where Jones admitted to texting Father in response to his telephone calls, thereby rendering the exhibits admissible or their admission harmless. *See Searcy*, 231 S.W.3d at 545; *James*, 102 S.W.3d 162. Finding no abuse of discretion, we overrule this point of error.

*(3)    Jones Failed To Properly Request a Free Record*

The trial court found Jones to be indigent, having appointed counsel for him twice at trial and once again on appeal, specifically finding that Jones had "completed an indigent statement/request for appointed counsel" and that he "qualifie[d] for such appointed counsel." The final judgment in this case assessed only court costs against Jones, but thereafter, a bill of costs was filed, charging the defendant an additional $223.00 for the record on appeal. Jones contends that the trial court erred in assessing him the $223.00 cost of preparing the appellate record.[8]

Indigent criminal defendants can make themselves entitled to a free record on appeal. *See Griffin v. Illinois*, 351 U.S. 12, 18–19, (1956); *Abdnor v. State*, 712 S.W.2d 136, 139 (Tex. Crim. App. 1986). Even though Jones was found indigent and appointed appellate counsel, a defendant may be indigent for the appointment of counsel but not indigent as to the preparation of the record on appeal. *See Castillo v. State*, 595 S.W.2d 552, 554 (Tex. Crim. App. 1980). Under Rule 20.2 of the Texas Rules of Appellate Procedure, in order to obtain the appellate record free of charge, an indigent appellant must, within the time for perfecting the appeal, file a motion for a free record

---

[8]The State agrees it was error to assess the cost of the record as part of the bill of costs.

9

and an affidavit of indigence. TEX. R. APP. P. 20.2. Texas caselaw requires the indigent appellant to exercise due diligence in asserting his indigence by timely filing the required motion and affidavit and to present evidence to sustain his assertion of indigence in the hearing on the motion. *See Gray v. State*, 928 S.W.2d 561, 562 (Tex. Crim. App. 1996); *Abdnor*, 712 S.W.2d at 140–41; *Sparkman v. State*, 55 S.W.3d 625, 633 (Tex. App.—Tyler 2000, no pet.).

Though Jones filed a written designation specifying matters for inclusion in the clerk's record, he failed to file the required motion for a free record or the required affidavit of indigence. *See* TEX. R. APP. P. 20.2. Therefore, Jones has failed to diligently assert his indigence for the purposes of obtaining a free record. Accordingly, we deny this point of error.

We affirm the trial court's judgment.


> Josh R. Morriss, III
> Chief Justice

Date Submitted:    April 4, 2017
Date Decided:    May 24, 2017

Do Not Publish

10