

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00088-CR

MARQUISE BROOKS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1226690D

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# OPINION

To get a pound of marihuana to sell, Floyd Miles convinced Marquise Brooks, Nathaniel Redic, and James Jones to join him in stealing the marihuana from a known dealer, John Dorsey. The foursome proceeded to Dorsey's Tarrant County[1] apartment, with Miles, Redic, and Jones, at least, carrying firearms. Evidence conflicted on whether Brooks was armed. The group entered Dorsey's apartment and started shooting. In the apartment was a young man recently graduated from college and having taken the LSAT, who was playing a video game. One of the shots from one of the four hit the young man in the back, killing him.

Brooks was convicted as a party to capital murder and sentenced to life in prison. On appeal, Brooks argues insufficient evidence and juror misconduct. Because (1) sufficient evidence supports Brooks' conviction and (2) the juror's unknowingly improper actions do not warrant reversal, we affirm the trial court's judgment.

## (1)     *Sufficient Evidence Supports Brooks' Conviction*

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

A defendant can be convicted as a party to the offense if, while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). To determine whether an individual is a party to an offense, the reviewing court may look to events before, during, and after the commission of the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). A court may also rely on circumstantial evidence to prove party status. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996). There must be sufficient evidence of an understanding and common design to commit the offense. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Each fact need not point directly to the guilt of the defendant as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties. *Id.* The mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985).

The evidence shows that Brooks was not merely present. While the evidence is inconclusive whether Brooks had a gun, it did support a finding that he was participating in an armed robbery with others who were obviously armed. There is evidence from which the jury could find that he was involved as a party to the crime and was criminally responsible for the murder. We overrule this point of error.

3

*(2)    The Juror's Unknowingly Improper Actions Do Not Warrant Reversal*

Brooks also contends that, because a juror did not reveal knowledge about the case, the jury was compromised, and reversal is proper. It is generally considered undesirable to have jurors with any case-specific knowledge that they might apply to a particular case. That is contrasted with the current technological age, in which a juror, now more than ever, can quickly and efficiently obtain information.

During a break in voir dire, one of the panelists pulled up an article about the case on his smart phone. At that point, the juror had not been told not to do so. It is difficult to say he did anything wrong under that circumstance. At the end of voir dire, the trial judge informed the jurors that it was improper to privately seek out information about a case on trial and that they should not seek information from sources including the internet. The next day, at the beginning of trial, that juror informed the court that he had already done such research. The juror, judge, attorneys, and reporter went to the judge's chambers to discuss the matter.

The juror had run a search with the victim's name and found a news article about his murder and about the victim's family. The article did not mention the defendant. The juror stated that he would still be able to be fair and impartial, that he had not reached any decision about guilt or innocence, and that he could consider the full range of punishment. Counsel requested a mistrial, which was denied.

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard and must be upheld if within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). Counsel suggests that the juror withheld material information

4

during voir dire. We disagree. The questions posed to the panel before the smart phone inquiry would not apply, and the ones asked afterward did not implicate this sort of scenario. We do not believe that juror misconduct occurred in the absence of knowledge by the juror that he was doing anything wrong. If, after the juror had performed the search, counsel asked the panel if anyone had any knowledge about the case and the juror kept silent, misconduct would exist. That did not happen here. Soon after being told not to conduct such a search, the juror advised the trial court of his earlier effort.

The question, then, is whether the situation was such as to justify granting a mistrial. The Texas Court of Criminal Appeals has recently discussed outside research conducted by a juror and relayed to the other jurors and found it to be an outside influence on the jury, which it concluded was a bad thing. *McQuarrie v. State*, 380 S.W.3d 145, 148–53 (Tex. Crim. App. 2012). This, however, is a different situation. Here, a single juror was involved, who did not speak to other jurors about the result of his search and who was directed to avoid mentioning any aspect of his research thereafter. To justify a mistrial, there must be a showing that a juror was actually biased by information that he received—a question that turns on the individual facts of each case. *Ladner v. State*, 868 S.W.2d 417, 423 (Tex. App.—Tyler 1993, pet. ref'd).

Very much on point is a recent and unpublished Houston case, in which a juror read a synopsis of information on the arrest of the defendant online. *Benson v. State*, Nos. 0112-00325-CR, 01-12-00326-CR, 2013 WL 655205 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (mem. op., not designated for publication). As pointed out in *Benson*, when a juror obtains information about a case, a number of factors are involved in looking for harm, such as the

5

nature of admonishments to the juror, the jurors statements about whether the articles involved would impact their deliberations, whether the jurors stated that they could disregard the articles, whether the articles contained information other than that which would be presented at trial, and whether the juror stated that she would follow the court's direction to decide the case based solely on the evidence.[2] We find our sister court's analysis persuasive and adopt it.

In the present case, the juror was questioned at length by the State, defense counsel, and the court. In response, the juror stated that the only matter addressed by the article involved the victim, that the article would not affect his ability to consider only the evidence presented at trial, and that he had not mentioned his brief research to other jurors. Though the juror also stated that the article would not keep him from considering the entire range of punishment, such comment was irrelevant, as Brooks' sentence was automatically life once he was convicted of capital murder. The juror was admonished again not to discuss his findings with the other jurors and to avoid any contact with such outside information from any source.

Evidence showed that the juror could disregard the information he had viewed and that the information was essentially the same sort of evidence elicited at trial about the victim. Finally, there was nothing in the article discussing the defendant in this case, thus any potential impact on a determination of guilt would likely be minimal. In light of the information elicited during the hearing, we cannot conclude that the decision of the trial court to deny the motion for mistrial constituted an abuse of discretion.

---

[2]Interestingly, the Houston opinion cites to three other appellate decisions, none of which were published.

We affirm the judgment.


                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:      December 3, 2013
Date Decided:        January 2, 2014

Publish