

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00069-CR

_____

BRENDA BENNETT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2
Hunt County, Texas
Trial Court No. CR1102137

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Some witnesses and surveillance video portrayed certain ways in which Brenda Bennett appeared to have helped her daughter Chanda Bennett[1] shoplift various items from a Walmart in Greenville. Halloween costumes, clothing items, and DVDs were among the items discovered in Chanda's purse after she attempted to leave the store without having paid for them. Brenda was convicted of misdemeanor theft[2] after witnesses testified that she assisted Chanda in concealing these items and in acting as a lookout for her. Brenda appeals her theft conviction and the resulting 180-day sentence and $2,000.00 fine. Because (1) sufficient evidence supports Brenda's conviction, and (2) the trial court's refusal to declare a mistrial was not an abuse of discretion, we affirm the trial court's judgment.[3]

*(1)     Sufficient Evidence Supports Brenda's Conviction*

In evaluating legal sufficiency, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Brenda was guilty of theft of $50.00 or more but less than $500.00. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine

---

[1]Because Brenda and Chanda Bennett, both frequently mentioned in this opinion, share the same last name, we will refer to them herein by their first names.

[2]*See* TEX. PENAL CODE ANN. § 31.03(e)(2) (West Supp. 2014).

[3]In a consolidated trial, Brenda was also convicted of bail jumping and failure to appear. Brenda has likewise appealed her conviction in that case. This appeal is the subject of a separate opinion in this Court's cause number 06-14-00070-CR issued of even date herewith.

legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of theft if he or she unlawfully appropriates property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03 (West Supp. 2014). Brenda argues that, because no stolen items were found in her purse or on her person, the evidence is insufficient to support her conviction. The State argues Brenda was properly found responsible as a party to the offense.

A person is criminally responsible as a party to an offense if the offense is committed by his or her own conduct, by the conduct of another for which he or she is criminally responsible, or by both. *See* TEX. PENAL CODE ANN. § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense" a person "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West

3

2011); *In re State ex rel.Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013). To determine whether an individual is a party to an offense, the reviewing court may look to events before, during, and after the commission of the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). A court may also rely on circumstantial evidence to prove party status. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g); *Brooks v. State*, 420 S.W.3d 337, 339 (Tex. App.—Texarkana 2014, no pet.). If the evidence shows that a defendant is present at the commission of an offense and encourages its commission by words, actions, or other agreements, then the evidence is sufficient to convict that defendant under the law of the parties. *Ransom*, 920 S.W.2d at 302.

Brenda testified at trial in her own defense that, on the day of the incident, she and Chanda went to Walmart to grocery shop. According to Brenda's testimony, they each got their own shopping cart and headed in different directions—Chanda looked at clothes while Brenda shopped for groceries. Chanda never indicated that she intended to steal anything from Walmart, and Brenda would have left the store if she had known of any such intent. Brenda did not see Chanda putting anything into her purse while at Walmart and did not know Chanda took anything. Brenda emphatically stated that she did not act as a lookout for Chanda when Chanda placed various items in her purse.

Misty Ashley, a Walmart asset protection officer, testified that, while making her rounds on the day of the incident, she observed Brenda and Chanda standing over a Walmart shopping cart. Brenda watched while Chanda placed Halloween costumes into a personal bag. After having observed this, Ashley contacted Tommi Weaver, a Walmart asset protection associate,

4

who began to watch the pair. Weaver observed mother and daughter in the clothing aisle, where she saw Chanda remove some children's tights from the package and place them into the shopping cart as Brenda stood at the front of the cart. In the grocery area, Chanda was observed "doing something in the buggy" while Brenda stepped off the aisle and looked around. A Walmart video recording of admittedly poor quality appears to show Chanda placing a DVD in her bag while Brenda stood behind her at the end of the cart. Brenda can also be seen retrieving some drinks from a refrigerated area while Chanda was at the service desk. When Brenda checked out with her grocery items, she did not pay for the drinks.

Weaver testified that it is common for shoplifters to work in pairs. Oftentimes, one person will attempt to hide the shoplifter's activity by blocking the cart and will also act as a lookout to make sure no one is coming that might see the theft.

At the checkout counter, Brenda retrieved an empty sack from the carousel and placed it on top of the purse containing the stolen merchandise. Brenda did not retrieve any additional bags from the carousel. After checking out, Brenda left the counter with the purse containing the stolen merchandise in her cart. The pair was stopped outside of the store and escorted to the back where the stolen items were recovered from Chanda's purse. The value of the stolen items, as listed on a store receipt entered into evidence, was $112.49. No stolen items were found in Brenda's purse or on her person.

The evidence shows that Chanda took various items—collectively valued in excess of $50.00—from the store and placed them inside her purse. Two witnesses testified that Brenda was present when Chanda secreted the stolen items in her purse. Brenda's behavior, consistent

5

with common shoplifting techniques, indicated that she attempted to block the cart to hide Chanda's actions and to look for others who might witness the theft. The testimony also indicates that Brenda directly observed Chanda place stolen items in her purse. Finally, Brenda's actions in attempting to cover Chanda's purse at the checkout counter indicates her awareness of the fact that the purse contained stolen items.

Viewing all of the evidence in the light most favorable to the verdict and deferring to the fact-finder to fairly resolve conflicts in the testimony, we hold that the jury was rationally justified in finding that Brenda committed theft beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899. There was sufficient evidence to show that Brenda, "acting with intent to promote or assist" the theft, "solicited, encouraged, directed, or aided" Chanda in committing the offense. *See* TEX. PENAL CODE ANN. § 7.02.

*(2)      The Trial Court's Refusal to Declare a Mistrial Was Not an Abuse of Discretion*

During direct examination**,** Brenda was asked when she became aware of the fact that Chanda had placed Walmart property in her purse. Brenda answered, "When they took us to -- said would y'all come back there and talk to us. And it's when we got back there and they said pull your stuff out of your purse." Brenda continued, stating, "They said take the stuff out of your purse. And I did. I had nothing on me. I had nothing in my pants. I don't steal. I try to do what is good in life . . . ." On cross-examination, the following exchange occurred:

> Q.    [Brenda], I believe you testified you've never stolen anything before ever?
>
> A.    No.
>
> Q.    Well, you were arrested in 1971 for shoplifting?

6

Defense counsel promptly objected to this question on the basis of relevance.[4]  The State maintained that Brenda opened the door to this inquiry by testifying that she had never stolen anything.  After the State indicated that it was unaware of a previous shoplifting *conviction*, the trial court sustained the objection and instructed the jury to disregard the question.  Brenda's request for a mistrial was denied.

On appeal, Brenda complains that the trial court erred in failing to grant her request for a mistrial.  Conversely, the State contends that the question was proper and in light of that, the trial court did not err in refusing to grant a mistrial.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion.  That ruling must be upheld if it was within the zone of reasonable disagreement.  *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Brooks*, 420 S.W.3d at 340.

Under Rule 609 of the Texas Rules of Evidence, a witness may be impeached with a prior offense, but only by a final conviction for a felony or a crime involving moral turpitude, not too remote in time. TEX. R. EVID. 609.  The Texas Rules of Evidence further prohibit the use of specific unadjudicated acts to impeach a witness.  Rule 608(b) provides,

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

---

[4]Brenda did not object to this question on the basis of Rule 403 of the Texas Rules of Evidence.  *See* TEX. R. EVID. 403.

7

TEX. R. EVID. 608(b). Rule 608(b) prohibits the use of "specific instances of conduct . . . for impeachment *except* to expose bias, correct any affirmative misrepresentations made on direct examination, or demonstrate lack of capacity." *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997) (emphasis added). Accordingly, when a witness, on direct examination, makes a blanket assertion of fact and thereby leaves a false impression with respect to his prior behavior or extent of his prior troubles with the law, "'he opens the door on his otherwise irrelevant past criminal history and opposing counsel may [impeach him by] expos[ing] the falsehood.'" *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007) (alterations in original) (quoting *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993)); *see Daggett v. State*, 187 S.W.3d 444, 453 n.23 (Tex. Crim. App. 2005).[5]

Brenda's testimony on direct examination that "I don't steal," is directly relevant to the charged theft offense and opened the door for the State to impeach her testimony by cross-examining her on this issue. *See Winegarner*, 235 S.W.3d at 790–91; *Daggett*, 187 S.W.3d at 453, n.24; *Clay v. State*, 390 S.W.3d 1, 14 (Tex. App.—Texarkana 2012, pet. ref'd) (where statement of good conduct is directly relevant to charged offense, opponent may cross-examine witness and offer extrinsic evidence rebutting statement) (citing *Daggett*, 187 S.W.3d at 453, n.24).

The State was entitled to try to impeach Brenda's testimony that she does not steal by asking her if she had previously been convicted for shoplifting. In this case, however, the

---

[5]Further, when "the defendant's statement of good conduct is directly relevant to the offense charged[,] . . . the opponent may both cross-examine the defendant and offer extrinsic evidence rebutting the statement. This is not impeachment on a collateral matter. The statement of good conduct goes to the 'heart' of the matter." *Daggett*, 187 S.W.3d at 453, n.24.

8

alleged previous behavior was an arrest from forty years' earlier with no conviction. Brenda complains that this area of inquiry was off limits because the prior event was so remote. Although Rule 609 prohibits evidence of a prior conviction if a period of more than ten years has elapsed since the date of the conviction or the release of the witness from the confinement imposed for that conviction, the exception to Rule 608(b) explicitly recognizes that the defendant's criminal history would otherwise be irrelevant but for the fact that the defendant opened the door to such testimony. But, here, there is no evidence of a prior conviction, and any prior arrest was quite remote.

Also, here, the trial court prohibited the inquiry and instructed the jury to disregard the question. Brenda never answered the question. The trial court denied Brenda's motion for mistrial. The question is whether the mere question was such that a mistrial was required. We think not.

When evaluating the effectiveness of a curative instruction to disregard, we look to "the nature of the [improper comment]; the persistence of the prosecutor; the flagrancy of the violation; the particular instruction given; the weight of the incriminating evidence; and the harm to the accused as measured by the severity of the sentence." *Searcy v. State*, 231 S.W.3d 539, 549 n.10 (Tex. App.—Texarkana 2007, pet. ref'd) (quoting *Roberson v. State*, 100 S.W.3d 36, 41 (Tex. App.—Waco 2002, pet. ref'd)).

The trial court instructed the jury to "disregard the last question that was asked by the prosecutor." We presume the jury followed the trial court's instruction to disregard this question in the absence of evidence that it did not. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App.

9

1999).  Given Brenda's self-serving testimony that preceded the State's question, we do not view the question as outrageous and so damning that an instruction to disregard would have no effect.

Beyond this, we consider the weight of the incriminating evidence.  Here, two witnesses identified Brenda as helping Chanda hide items in her purse as the two shopped at Walmart.  The jury could and did believe that Brenda acted as a lookout and attempted to conceal Chanda's theft.  The jury was free to disbelieve Brenda's testimony that she knew nothing about the theft.

While Brenda was sentenced to 180 days in jail, the maximum term of confinement for a class B misdemeanor,[6] that does not convince us that the trial court's refusal to grant a mistrial amounted to an abuse of discretion.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:      September 3, 2014
Date Decided:       September 26, 2014

Do Not Publish

---

[6]TEX. PENAL CODE ANN. § 12.22 (West 2011).

10