**1565·14**

PD-1565-14

IN THE COURT OF
CRIMINAL APPEALS
AUSTIN, TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 15 2015

Abel Acosta, Clerk

CLINT WELDON WILSON,
      Appellant Pro Se
Vs.

THE STATE OF TEXAS,
      Appellee

Appeal From
THE SIXTH COURT OF APPEALS, TEXARKANA, TEXAS
NO. 06-14-00021-CR

FILED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

PETITION FOR DISCRETIONARY REVIEW

CLINT WELDON WILSON
T.D.C.# 1891353
CLEMENTS UNIT
9601 Spur 591
AMARILLO, Texas 79107

ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES

Pursuant to Texas Rule of Appellate Procedure the following is a list of the Parties:

Appellant
Clint Weldon Wilson,
Pro Se

Clint Weldon Wilson
T.D.C.# 1891353
Clements Unit
9601 Spur 591
Amarillo, Texas 79107

Appellee
THE STATE OF TEXAS

Will Ramsey
Hopkins County Dist. Attorney
114 Main Street
Sulphur Springs, Tx. 75482
903-885-0641

i.

# Table of Contents

Identity of Parties........................................ i.

Table of Contents......................................... ii.

Index of Authorities...................................... iii.

Statement of Case..................................... pg. 1

Statement of Procedural History....................... pg. 1

Grounds for Review.................................... pg. 2

Argument.............................................. pg. 2

Prayer................................................ pg. 7

Certification......................................... pg. 7

Appendix.............................................. pg. 8

# Index of Authorities

**Texas Criminal Appeals Case Laws:**

Williamson Vs. State, 672 Sw.2nd 484-86 (Tex.Crim.App.1984)

pg. 2,3,4,5,

Smith Vs. State, 965 Sw.2nd 509-13 (Tex.Crim.App. 1988)

pg. 2


**Texas Rules of Appellate Procedure**

Rule 66.3 (c)                                    pg. 2

Rule 68.6                                        pg. 1

iii.

In The Court of
Criminal Appeals
Austin, Texas

Clint Weldon Wilson,
                    Appellant Pro Se,


Vs.


The State of Texas,
                    Appellee


Appeals From The Sixth Court of Appeals, Texarkana,
Texas In Court of Appeals No. 06-14-00021-CR


Petition for Discretionary Review


## Statement of Case

Appellant was indicted for murder out of the 8th District Court of Franklin County, Texas in Cause No. F8775. A jury was empaneled on November 19, 2013, and on November 22, 2013, that jury rendered a verdict of guilty and sentenced to Life in prison with a fine assesed of 10,000.00 dollars.

## Statement of Procedural History

On November 7, 2014, the Sixth Court of Appeals handed down it's opinion to affirm the trial courts conviction in F8775. Appellant filed a Motion for Extension of Time to file his Petition For Discretionary Review on November 25, 2014 and was granted by this court, making it due on February 6, 2015.

This court issued an order on March18, 2015 that Appellants Petition violates Texas Rule of Appellate Procedure 68.6 because the Petition exceeds the proper length. This Petition for Discretionary Review is due on April 16, 2015.

## Grounds for Review

### ONE:

The Court of Appeals erred in it's disposition because it has decided an important question of State Law that the evidence in Appellants Trial wa sufficient to justify the trial courts charge to the jury on the issue of Appellant having Provoked the difficulty " in a way that conflicts, with applicable decision of The Court of Criminal Appeals". see Texas Rule of Appellate Procedure 66.3 (c).

## Argument

### Ground One:

In the Court of Appeals Memorandum Opinion of Page 7, this Court did erred in it's disposition for it was in conflict with William Vs. State, 672 Sw.2nd 484,486 (Tex.Crim.App. 1984) decision made by the court, that the evidence presented at the Appellants trial was sufficient to justify the trial Court's charge to the jury on the issue of the Appellant having provoked the difficulty.

The question Appellant presents to this court was there sufficient evidence to charge the jury on having provoked the difficulty in accordance with these facts and in this courts decesion in Williamson Vs. State, 672 Sw.2nd 484?

### Jury Instruction on Provoking the Difficulty

The governing law on instructing a jury on provoking the jury in properly giving when: (1) Self-defense is an issue; (2) These are facts in evidence which show that the deceased made the first attack on the defendant; and (3) tyhe defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury on the deceased. see Williamson id. at 485-86; also Smith Vs. State, 965 Sw.2nd 509-513 (Tex.Crim.App. 1998).

All elements are questions of fact. id. at 513. An instruction on provocation should be given when there is evidence from which a rational jury could find every element of provocation beyond a Reasonable Doubt. id.

2.

**Element One:**

"Viewing the evidence in light most favorable to the given instruction",id., there was sufficient evidence that self-defense was the issue. See Entire Record.

**Element Two:** )

"Viwing the evidence in the light most favorable to the given instruction:id., there was sufficient evidence that the deceased made the first attack on the Appellant, first by his prior numerous threats of death - for example,"to drag Appellant out of the house, hang him from a tree and skin him like a fish," (vol. 6 pg. 147-48, L 8-17). Then by showing up at the residence and refusing to leave despite repeated requests by Aldis the owner of the residence, and then by the appellant. Finally the deceased's lunge toward appellant after two warning shots were fired was the physical act that rendered his conduct more than a mere threat.

**Element Three:**

Here, "viewing the evidence in the light most favorable to the given instruction"id., there was [N]o sufficient evidence to charge the jury on provoking the difficulty, that the Appellant, " did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury on the deceases", see Williamson Vs. State, 672 Sw.2nd at 485-86, that a rational jury could have found beyond a reasonable Doubt. The facts of the case clearly show beyond a Reasonable Doubt that on the morning of the shooting: (1) Appellant was engaged in a full relationship with Aldis, (the ex-girlfriend of the deceased)(Vol. 4, pg. 172. L. 10-21), (2) the deceased was a heavy drinker (vol. 4, pg. 82. L. 4; pg. 40, L. 9-10; pg. 149,

L. 11-12, pg. 215, L. 1-2); (3) the deceased was very drunk at the time of the shooting (0.296) (vol. 5 pg. 176-77, L. 24-31) (4) the deceased came to the residence of Aldis & Appellant ( vol. 4 pg. 45-47); (5) the deceased was told by Aldis and her mother not to come over, they had a restraining order against the deceased and he was not allowed on the property (vol. 4 pg. 187. L. 5-14); and finally (6) the deceased unlawfully entered the habitation of Aldis and Appellant without permission (vol. 4 pg. 155-56)

That morning Aldis & Appellant were in thier bed asleep when the deceased entered the trailor without any permission or with-out even knocking on the door. The deceased woke up Aldis & Appellant by yelling from the living room. Aldis jumped out of the bed and ran to the living room to confront the deceased and to make him leave. (Vol. 4 pg. 124, L 10)(vol. 4 pg. 124, L. 22-24) Aldis repeatedly told the deceased to leave he refused and they began to argue and then to fight. Appellant could hear the fighting from the bedroom (vol. 4 pg. 156-57, L. 19-5) Appellant then heard Aldis scream Appellant heard panic in her voice (vol. 6 pg. 140, L. 4-8). Appellant then went to help Aldis. When Appellant entered the room the deceased had Aldis by her arm (vol. 6 pg. 143, L. 4-6). Appellant told the deceased to let go of Aldis and to leave ( vol. 6. 143-44, L. 24-2).

The deceased let go of Aldis and she ran behind the Appellant but the deceased refused to leave and the two began to exchange heated words (vol. 4 pg. 131-32) said Aldis "Appellant continued to ask the deceased to leave and refusing to do so deceased came

towards the Appellant to start fighting". Appellant then fired two warnings shots, one in the wall and one in the floor. Pursuant to the testimony of Aldis, the warning shots just "pissed off" the deceased (vol. 4 pg. 152. L. 22-23) the deceased stopped and told the Appellant "you don't know who your fucking with bitch" the deceased then lunged toward Appellant and after the repeated threats then the warning shots and finally the lunge toward Appellant, the Appellant fired several shots that ended in the killing of the deceased.

From this evidence it is perverse from a factual point of view to have a provocation instruction, especially when before the shooting (1) Appellant repeatedly asked the deceased to leave (2) Appellant then gave two warning shots (3) the deceased then told the Appellant "you don't know who your fucking with bitch" and then lunged toward him.

In view of this evidence that is clearly in the record, a reasonable jury would have seen that the deceased provoked the difficulty unto Appellant. The Appellant sought to avoid a conflict not to incite it. This case mirror's this courts decision in Williamson Vs. State.

In Williamson Vs. State, 672 Sw. 2nd 484-86 (Tex.Crim.App. 1984), Williamson asked the deceased Jamison to leave his house and Jamison began to argue with Williamson. Jamison reacted violently by lunging toward Williamson's Machete to assault him and Williason killed Jamison by shooting him in the head. This Court made a judicial determination on the facts that the evidence did not Raise the issue that it was Williamson's purpose to provoke and

5.

attack from the deceased, in order that he might have a pretext for killing Jamison. This Court Reversed and Remanded that cause back to trial court see id. at 486.

Therefore, here in this instant case, viewing the evidence in light most favorable to the given istruction, the evidence is insufficient to show that it was the Appellant who provoked the attack from the decesed, in order that he might have a pretext for killing him.

The Court of Appeals did err in its disposition for it is in conflict with Williamson Vs. State. Based on these facts and the evidence, a Rational Jury could not have found every element of provocation beyond a Reasonable Doubt.

## Prayer

Wherefore, Premises Considered, Appellant prays this Honorable Court of Criminal Appeals consider the facts of this petition in accordance with this court's opinion in <u>Williamson Vs. State.</u>

So prayed on this 12th day of April, 2015

Respectfully Submitted,

*Clint Wilson*
Clint Weldon Wilson
T.D.C. #1891353
9601 Spur 591
Amarillo, Texas 79107

## Certificate of service

I, <u>Clint Weldon Wilson,</u> state under the Penalty of Perjury that these facts are true and correct. Also a true and correct copy has been forwarded to the opposing party at the address below.

Executed on this day 12th, April, 2015.

Will Ramsey
Hopkins County Dist. Attny.
114 Main Street
Sulphur Springs, Texas 75482

*Clint Wilson*
Clint Weldon Wilson

7.

APPENDIX


APPENDIX


APPENDIX


APPENDIX


APPENDIX


APPENDIX

# MEMORANDUM OPINION

In January 2013, Aldis Mendez[1] stood between two men, her then boyfriend, Clint Weldon Wilson, and her ex-boyfriend and father to her three children, Juvenal Gonzales, just before Wilson shot and killed Gonzales. Except for the central fact that Wilson shot Gonzales, Aldis' version of the events that ensued had little in common with Wilson's version. The jury believed Aldis and delivered a verdict that Wilson was guilty of murdering Gonzales.[2] On appeal, Wilson complains about the jury charge, the lack of a mistrial, and the amendment of the indictment after trial began. We affirm the judgment of the trial court, because (1) the jury instruction on provocation was warranted by the evidence, (2) a jury instruction on threats by the victim was properly refused, (3) a jury instruction on necessity was properly refused, (4) mistrial was not mandated, (5) Wilson's complaint regarding the lack of a jury instruction on justifiable force is inadequately briefed on appeal, and (6) we have no jurisdiction over the amendment of the indictment in a companion case not on appeal.

We set out the basics of the two different versions of the facts surrounding the shooting.

Wilson's version of the facts portrayed him as a disabled man seeking only to protect his girlfriend and himself from a drunken, violent ex-boyfriend. Wilson testified that he met Aldis in late August 2012 and had lived with her and her three children in her mobile home until late November of that year. He left her for another woman, but began seeing her again in December

---

[1]Because we also refer herein to Aldis Mendez' mother, Supaya Mendez, we will refer to both women by their first names.

[2]On the murder charge, appealed here, Wilson was sentenced to life in prison and assessed a $10,000.00 fine. Wilson was also found guilty of unlawful possession of a firearm by a felon and sentenced to ten years' confinement, to run concurrently, and assessed another $10,000.00 fine. He does not appeal the firearm conviction.

when the other relationship faltered. Around Christmas, his hands and a foot were frostbitten from exposure.[3] Aldis picked him up from the hospital and took him to her home where he stayed until the shooting. Several times during the period he lived with Aldis, she would receive telephone calls late at night from Gonzalez. Aldis would give Wilson the telephone. He would tell Gonzalez that she did not want to talk to him or get back together with him and to stop calling. Gonzalez would call two or three nights in a row, then stop and begin again two or three weeks later. During these conversations, Gonzalez would reportedly curse Wilson, threaten to "f*** [Wilson] up," and threaten his life. About seven to ten days before the shooting, Gonzalez told Wilson he was "going to come out there, drag [him] from the house, hang [him] on a tree, and skin [him] like a fish."

Wilson also testified that, on the morning of January 19, 2013, he and Aldis were sleeping in bed when they were awakened by yelling in the living room. Aldis looked at him with panic in her eyes and said, "It's [Gonzales]," and ran into the living room. Wilson did not follow her because he thought she could handle the situation. But Aldis and Gonzales kept arguing, and it was getting louder and louder. Wilson heard her scream, grabbed a pistol, and proceeded to the kitchen. Wilson claimed he grabbed the pistol because he could not defend himself against Gonzalez. When Wilson got to the kitchen, Aldis was struggling to get away from Gonzalez. Wilson told him, "[L]et her go, motherf*****," then pointed the pistol at Gonzalez. Gonzalez let Aldis go, and she ran behind Wilson. Wilson kept telling Gonzalez to leave, but Gonzalez just said, "[Y]ou ain't going [to] do nothing, you little bitch." Wilson then

---

[3]Wilson had been hanging out with his cousin, took methamphetamine, got lost, and passed out in a field in the snow for several hours.

fired a warning shot through the floor. He did not want to hurt Gonzalez, but he was afraid of him and wanted him to leave. Instead, Gonzalez got more aggressive, and Wilson fired a second warning shot through the wall. Gonzalez bowed up, cursed him, and lunged at him. Wilson then shot him four or five times "for [himself] and for -- Aldis and Lexi (Aldis' daughter)." Wilson said he was afraid for his life, as well as the lives of Aldis and Lexi, and claimed he had no choice. Wilson then told the jury of a similar incident that occurred a year earlier in which he had to defend himself from the ex-boyfriend of his then girlfriend. Wilson ended up killing him, also. Although denying he posted it, Wilson admitted opening a Facebook page in which he bragged about having studied at the Harvard Law School of Self-Defense Class of 2011. He claimed self-defense in that case, also, and charges were dismissed in August 2012. On August 8, 2012, a post appeared on his Facebook in which he apparently bragged about it.

Aldis' version was considerably different, and she was the only other surviving witness to the events inside the mobile home. She testified that Gonzalez was the father of her three children and that they had broken up in March 2012. She said that she met and began dating Wilson in September and that he would stay every other day or so. She confirmed that Gonzalez came over unannounced that morning and that she went out to talk with him. They began arguing "a little bit" and she told him to leave, then Wilson came out of the bedroom. Wilson was walking with his hand behind his back and she got scared because she thought he had a gun. Aldis told Wilson to go back to the bedroom and that she would handle it, not to worry about it. Wilson told Gonzalez to leave, and the two men began mouthing back and forth, cussing at each other. She kept telling Wilson that she would handle it and that she would make Gonzalez leave.

4

She was not afraid Gonzalez would hurt her. Then Wilson took a step forward and pulled out the gun. She told him not to do anything. She picked up her daughter, Lexi, and lifted her out through the back door because she did not want her to see whatever was going to happen. Then, Wilson fired a shot through the floor. Next, Wilson shot through the wall. Right after that, he shot Gonzalez the first time, then a second time. Gonzalez had only taken one step forward and then he was shot. She closed her eyes and kept telling Wilson to stop. The shots came back to back, and she opened her eyes after the third or fourth shot, when Gonzalez was going out the door. She was in shock.

She also testified that she did not feel threatened by Gonzalez that day and did not think he made any threat that deserved being shot. He never displayed a weapon and never threatened to kill anyone that day. Aldis acknowledged that Gonzalez and Wilson had argued over the telephone, but denied that Gonzalez ever threatened to come over and kill him. On cross-examination, she admitted that Gonzalez was "pissed off" at both she and Wilson that day. She also admitted that Wilson could not make a fist that day because of his frostbite.

Supaya Mendez, Aldis' mother, testified that Gonzalez was a fighter but never used weapons. Supaya was never afraid of him killing anyone. She said that Aldis and Gonzalez would argue a lot because he drank a lot. He would get violent when he drank, but not toward her, just toward the walls.

The medical examiner who performed the autopsy on Gonzalez testified that, based on her examination, one shot entered the front of his body, one entered his left side, and two entered at his lower back/buttocks. One or two other bullets grazed his back.

5

*(1)    The Jury Instruction on Provocation Was Warranted by the Evidence*

Wilson complains of the trial court's inclusion of a charge on provocation, asserting there was no evidence that would support its inclusion.[4]  We find there was sufficient evidence to include the instruction and overrule this point of error.

Our review of an alleged error in a jury charge involves a two-step inquiry. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  First, we determine whether an error occurred, and, if it did, then we "determine whether sufficient harm resulted from the error to require reversal." *Id.* at 731–32; *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984) (op. on reh'g), *reaff'd by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732.  When a proper objection is made at trial, reversal is required if the error is "calculated to injure the rights of defendant"—the appellant need only demonstrate "some harm" on appeal. *Id.*; *see also Almanza*, 686 S.W.2d at 171.  In the case of unpreserved error, reversal is required only when "the error is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial' -- in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd).  "Egregious harm" results from errors affecting the very basis of the case or that deprive the defendant of a valuable

---

[4]The Jury Instructions included a definition of "Provoking the Use or Attempted Use of Force," an instruction on "Failure to Retreat," and an instruction on "Presumption," all of which are substantially the same as those set forth in Sections B14.8 and B15.3 of the State Bar of Texas' TEXAS CRIMINAL PATTERN JURY CHARGES—DEFENSES §§ (2013). The "Failure to Retreat" and "Presumption" instructions are based on Sections 9.32(b) and (c), respectively, of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 9.32(b), (c) (West 2011). It is unclear from the record and Wilson's brief whether he is complaining of the definition only or also the mentioning of provocation in these other instructions.

right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Smith v. State*, 424 S.W.3d 588, 597 (Tex. App.—Texarkana 2013, no pet.).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). A trial court must submit a charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013). "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Reeves*, 420 S.W.3d at 818 (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)).

> The trial court must give a charge on provocation
>
> when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm on the other.

*Smith v. State*, 965 S.W.2d 509, 513 (Tex. 1998).

Each of the three elements may be proved circumstantially. *Id.* at 515, 517–18. A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Id.* at 514. Our inquiry is whether "a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction." *Id.*

7

There is ample evidence to support instructing the jury on provocation. From the above relevant testimony, it could be reasonably inferred that Wilson purposefully inserted himself into a domestic dispute and that threatening Gonzalez with a firearm and the words he used were calculated to provoke the attack by Gonzalez. In his brief, Wilson focuses on the lack of direct evidence of "words or acts" that prove the third element, i.e., that Wilson intended to provoke the difficulty as pretext for inflicting injury on the deceased. However, a jury does "not need to be able to put its hands on the particular act or words[;]" rather, "this finding can be made through inference relying on circumstantial evidence." *Id.* at 515. From the medical examiner's testimony, a jury could reasonably infer that Gonzalez stopped his advance after being shot once and began turning to retreat. Wilson, however, kept shooting and shot Gonzales in the side, then at least three times in the back. In addition, Wilson testified that he had had several run-ins with Gonzalez over the telephone and that a few days before this incident Gonzalez threatened to kill him. A rational jury could have inferred his intent from this evidence, coupled with Wilson's recent prior homicide in which he successfully claimed self-defense. Thus, there is evidence of each element that supports the court's decision to include the instruction.

Accordingly, we conclude that the trial court did not err in instructing the jury on provocation.

*(2)   A Jury Instruction on Threats by the Victim Was Properly Refused*

Wilson also complains of the lack of an instruction on the prior threats made by Gonzalez.[5] Because the proposed instruction would have been an impermissible comment on the weight of the evidence, we overrule this point of error.

In asserting entitlement to an instruction on threats by Gonzalez, Wilson relies on *Fielder v. State*, 756 S.W.2d 309 (Tex Crim. App. 1988). However, the complaint in *Fielder* was the exclusion of *evidence* related to the defendant's past relationship with the deceased and the reasonableness of her fear of him. *Id.* at 318. Wilson makes no such complaint on appeal.[6] Rather, this case is controlled by *Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007).

In *Walters*, the Texas Court of Criminal Appeals considered whether, in a murder case where the jury is charged on self-defense, the defendant is entitled to an instruction on prior oral threats by the deceased.[7] The court held that,

> generally speaking, neither the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence.

---

[5]Wilson requested the following instruction:

> Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he is permitted to introduce evidence of the threats made, but the same shall not be regarded as affording justification for the offense unless it be shown, at the time of the killing, the person killed by some acts then done, manifested in an intention to execute the threats so made, and provided that a reasonable person in the defendant's situation would not have retreated.

[6]Wilson testified at trial about the threats to his life made by Gonzalez, and his trial counsel emphasized these threats and Gonzalez' violent nature in his final argument.

[7]The proffered instruction was identical to the one in this case.

9

*Id.* at 212. As in *Walters*, the proffered instruction meets all three criteria. First, the Texas Penal Code does not recognize prior oral threats as a defense or justification. Second, the trial court included the statutory definition of "reasonable belief," which would necessarily include threats made before the incident. *Id.* at 213. Third, giving the instruction would unduly focus attention on evidence in support of a finding of self-defense by "improperly tell[ing] the jury how to consider certain evidence before it." *Id.* at 214.

Accordingly, we conclude that the trial court did not err in denying Wilson's request for an instruction on prior oral threats.

### (3) A Jury Instruction on Necessity Was Properly Refused

Wilson complains that he was entitled to a jury instruction on the defense of necessity.[8] Since the trial court charged the jury on self-defense using deadly force, we find that the trial court did not err in refusing to include an instruction on necessity.

Under Section 9.22 of the Texas Penal Code, conduct is justified under necessity, if

>     (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
>     (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
>     (3) a legislative purpose to exclude the justification claimed for the conduct does not · otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22 (West 2011).

---

[8]In his brief on this point of error, Wilson merely quotes verbatim his trial counsel's argument made to the trial court. Since the argument below included appropriate legal authority and argument based on that authority, we will address the point of error. Our addressing this point of error should not be taken as approval of this very questionable practice.

Thus, if there is a plain legislative purpose to exclude the defense of necessity, then subsection (3) precludes its application. This Court has previously held that a defendant is not entitled to an instruction on necessity when self-defense using deadly force is an issue since including an instruction on necessity "would undermine the Legislature's purpose in imposing the duty to retreat" in Section 9.32 of the Texas Penal Code. *Searcy v. State*, 231 S.W.3d 539, 544 (Tex. App.—Texarkana 2007, pet. ref'd); *see Butler v. State*, 663 S.W.2d 492, 496 (Tex. App.—Dallas 1983), *aff'd on other grounds*, 736 S.W.2d 668 (Tex. Crim. App. 1987).

However, these cases were decided under the former version of Section 9.32 that contained a "legislative purpose" to require retreat, if a reasonable person would, before using deadly force.[9] *See Butler*, 663 S.W.2d at 496. In 2007, the Legislature amended Section 9.32, removing the retreat provisions and adding "provisions specifying when a person does *not* have a duty to retreat." *Morales v. State*, 357 S.W.3d 1, 5 (Tex. Crim. App. 2011). Thus, a legislative purpose to require retreat before using deadly force no longer "plainly appear(s)" in Section 9.32, as required to preclude an instruction under Section 9.22. Nevertheless, we find that

---

[9]The former version of Section 9.32 of the Texas Penal Code provided,

A person is justified in using deadly force against another:
    (1)     if he would be justified in using force against the other under Section 9.31 of this code;
    (2)     if a reasonable person in the actor's situation would not have retreated; and
    (3)     when and to the degree he reasonably believes the deadly force is immediately necessary:
        (A)     to protect himself against the other's use or attempted use of unlawful deadly force; or
        (B)     to prevent the other's imminent commission of aggravated kidnapping, murder, rape, aggravated rape, robbery, or aggravated robbery.

Act of May 27, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141, 2141 (amended 2007) (current version at TEX. PENAL CODE ANN. § 9.32 (a) (West 2011)).

Section 9.32 still contains a plain legislative purpose that precludes the inclusion of an instruction on necessity when a Section 9.32 defense is implicated.

Section 9.32 provides, in pertinent part, as follows:

(a)     A person is justified in using deadly force against another:

    (1)     if the actor would be justified in using force against the other under Section 9.31; and
    (2)     when and to the degree the actor reasonably believes the deadly force is immediately necessary:
        (A)     to protect the actor against the other's use or attempted use of unlawful deadly force; or
        (B)     to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

TEX. PENAL CODE ANN. § 9.32(a) (West 2011).

From a plain reading of the statute, it is clear that the Legislature intended to justify the use of deadly force only when one's life is immediately threatened by another's use of unlawful deadly force or to prevent the commission of specific violent crimes. By contrast, the defense of necessity has a much lower threshold before it can be asserted. Necessity requires only that the conduct be necessary to "avoid imminent harm." TEX. PENAL CODE ANN. § 9.22(1). "Harm" is defined as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." TEX. PENAL CODE ANN. § 1.07(a)(25) (West Supp. 2014). Allowing an instruction on necessity when, as here, the evidence requires an instruction on self-defense using deadly force would undermine the

12

legislative purpose of only allowing deadly force to be used to prevent the immediate threat to one's life or to prevent the commission of specific violent crimes.[10]

Accordingly, we conclude that the trial court did not err in denying Wilson's request for an instruction on necessity.

*(4)      Mistrial Was Not Mandated*

Wilson also complains about not being granted a mistrial after the State put on evidence of items used for "distributing narcotics." We find that the trial court properly instructed the jury and overrule this point of error.

During the State's direct examination of Robert Zinn, an inspector for the Franklin County Sheriff's Department, the following exchange took place:

> Q.      Besides the items directly related to the shooting, were there other things found in the house that were of interest?
> A.      Yes, sir.
> Q.      And what was that?
> A.      There was, I believe, some digital scales found, some methamphetamines found, and I believe that there was a price list of how much -- for someone that was distributing narcotics, it broke down the price of how much each of those --
> MR. LONG: May we approach the bench?
> THE COURT: You may.

Outside the presence of the jury, Wilson objected to any testimony regarding distributing narcotics, and the court sustained the objection. When the jury returned, the court gave the following instructions:

> THE COURT:      Please be seated. Thank you.

---

[10]Since we have found that Wilson was not entitled to an instruction on necessity when self-defense using a deadly weapon is implicated, we do not reach the State's contention that the necessity defense was not available to Wilson since he did not admit to the conduct. *See Juarez v. State*, 308 S.W.3d 398 (Tex. Crim. App. 2010).

13

> Ladies and gentlemen, I have an instruction for you. It's one of those instructions that I told you you may very well be given. And what I'm going to tell you is that just before your break, you heard some testimony regarding digital scales, price lists, and some suggestion of distribution of narcotics. You are to disregard that testimony and consider it for no purpose whatsoever. All right?

Wilson then moved for a mistrial, which was denied. Thus, Wilson has properly preserved the point for appeal. *Hines v. State*, 269 S.W.3d 209, 214 (Tex. App.—Texarkana 2008, pet. ref'd).[11]

Granting a mistrial is appropriate in "those cases in which an objection could not have prevented, and an instruction to disregard could not cure, the prejudice stemming from an event at trial—i.e., where an instruction would not leave the jury in an acceptable state to continue the trial." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). However, a mistrial is not required where prejudice is curable by an instruction to the jury to disregard. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). "A trial court's denial of a mistrial is reviewed under an abuse of discretion standard and must be upheld if within the zone of reasonable disagreement." *Brooks v. State*, 420 S.W.3d 337, 340 (Tex. App.—Texarkana 2014, no pet.) (citing *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010)).

At the time this exchange occurred, there had already been unopposed testimony regarding the presence of marihuana and methamphetamine in the mobile home and Wilson's own drug use. Later, Wilson testified of his prior convictions for aggravated assault and felony

---

[11]"The proper method of preserving error in the admission of improperly offered evidence is for appellant's counsel to: (1) state a timely specific objection, (2) obtain a ruling on the objection from the trial court, (3) move for an instruction for the jury to disregard, (4) obtain a ruling on the instruction and if sustained, have the jury instructed, (5) move for a mistrial, and (6) obtain a ruling on the motion for mistrial. These steps must be taken in sequence, and counsel cannot object and move for an instruction and mistrial without obtaining a ruling on the objection." *Hines*, 269 S.W.3d at 214 (quoting *Hadden v. State*, 829 S.W.2d 838, 841 (Tex. App.—Corpus Christi 1992, pet. ref'd)).

possession of marihuana. In addition, the testimony and items mentioned were never mentioned again. In a case such as this, in which the bulk of testimony centered around the violent behavior and the abuse of drugs and alcohol by both Wilson and Gonzalez, it is unlikely that any prejudice caused by this one isolated comment could not be cured by the trial court's instruction to disregard it.

The trial court did not abuse its discretion in overruling Wilson's motion for mistrial.

*(5)* *Wilson's Complaint Regarding the Lack of a Jury Instruction on Justifiable Force Is Inadequately Briefed on Appeal*

Wilson also complains that the trial court erred by denying his request to include an instruction on justifiable force. In his brief, Wilson merely sets forth verbatim the argument made by his trial counsel to the trial court. The argument does not contain any citations to statutory or caselaw, other than one general reference to the "Penal Code."

It is the duty of an appellant to cite specific legal authority and provide legal arguments based on that authority. *Bell v. State*, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002). Appellate counsel is required to "cite specific legal authority and to provide legal argument based on that authority." *Rhoades v. State* 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (citing *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992)); *see* TEX. R. APP. P. 38.1(i); *Ex parte Granger*, 850 S.W.2d 513, 515 n.6 (Tex. Crim. App. 1993). Where adequate briefing is not provided, the contention can be overruled. *Rhoades*, 934 S.W.2d at 119. We overrule this contention of error.

15

*(6)*    *We Have No Jurisdiction Over the Amendment of the Indictment in a Companion Case Not on Appeal*

In his final point of error, Wilson asserts that the trial court erred when it allowed the State to amend the indictment on a related charge after trial began and over his objection. We overrule this contention.

Wilson was charged with two separate offenses that were tried together. The first, which is the subject of this appeal and over which we have jurisdiction, was for murder (trial court cause number F-8775). While the murder indictment was amended, that was done seventeen days before trial and is not part of Wilson's complaint.

The second charge was for the offense of unlawful possession of a firearm by a felon (trial court cause number F-8776). On the third day of trial, before introducing evidence of the prior offense, the State moved to amend the firearm indictment. Wilson timely objected to the amendment.

Although these charges were tried together, Wilson has not appealed from his conviction for unlawful possession of a firearm by a felon. Because no timely notice of appeal regarding that conviction was filed, we have no jurisdiction over the firearm possession case. *See Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996). Accordingly, we overrule this point of error.

16

We affirm the judgment of the trial court.

Josh R. Morriss III
Chief Justice

Date Submitted:     August 28, 2014
Date Decided:      November 7, 2014

Do Not Publish